950 So.2d 424 (2006)
Alan M. O'NEAL; A & J Holdings, LLC; William H. Smith; and South Walton Properties, LLC, Appellants,
v.
Robert E. BLACKERBY; Florida Bahama Group, LLC; Robert Blackerby & Associates, LLC; BAB Developers, LLC; BAB Developers I, LLC; BAB Developers II, LLC; BAB Developers III, LLC; BAB Developers IV, LLC; BAB Developers V, LLC; BAB Developers VI, LLC; BAB Developers VII, LLC; BAB I, LLC; and BAB II, LLC, Appellees.
William H. Smith and South Walton Properties, LLC, Appellants,
v.
Robert E. Blackerby; Florida Bahama Group, LLC; Robert Blackerby & Associates, LLC; Alan M. O'Neal; A & J Holdings, LLC; BAB Developers, LLC; BAB Developers I, LLC; BAB Developers II, LLC; BAB Developers III, LLC; BAB Developers IV, LLC; BAB Developers V, LLC; BAB Developers VI, LLC; BAB Developers VII, LLC; BAB I, LLC; and BAB II, LLC, Appellees.
Nos. 1D06-2524, 1D06-2465.
District Court of Appeal of Florida, First District.
December 21, 2006.
*425 Major B. Harding and John R. Beranek of Ausley & McMullen, Tallahassee; and J. Nixon Daniel, III, Mary Jane Bass, and Terrie L. Didier of Beggs & Lane, RLLP, Pensacola, for Appellants Alan M. O'Neal and A & J Holdings, LLC.
Elliott H. Scherker, Elliott B. Kula and Daniel M. Samson of Greenberg Traurig, Tallahassee; Barry Richard of Greenberg Traurig, Miami; and Jannea S. Rogers and Bradley R. Byrne of Adams and Reese, LLP, Mobile, AL, for Appellants William H. Smith and South Walton Properties, LLC.
Jeffrey P. Whitton, Panama City; W. Dexter Douglass and Thomas Porter Crapps, Tallahassee; Philip A. Bates, Pensacola; and Martha Blackmon-Milligan, Panama City, for Appellees Robert E. Blackerby, Florida Bahama Group, LLC, and Robert Blackerby & Associates, LLC.
ALLEN, J.
Parties in these appeals, which we hereby consolidate for purposes of rendering our decision, are members of a Florida Limited Liability Company known as BAB Developers, LLC ("the company"). The appellants challenge a nonfinal order entering partial summary final judgment and directing the immediate disbursement of proceeds from the sale of real property owned by the company. The appellants argue that the trial court erred by concluding, as a matter of law at the summary judgment stage of the proceedings below, that the sale of this property created an event of dissolution under a plain reading of the provisions of the company's operating agreement. We reverse the order under review.
As specified in the operating agreement, the company was formed to "acquire, own, manage, control and develop real estate and the products thereof, directly or through subsidiaries, and to engage in such other activities permitted under the laws of the State of Florida." And the agreement further provides that, unless dissolved and terminated in accordance with the provisions of section 13 of the operating agreement, the company's duration is perpetual. Among those circumstances designated in section 13 as constituting an event of dissolution is the "sale or other disposition of all or substantially all of [the company's] property and assets." The agreement further specifies that the company's net cash flow, after the payment of taxes, is to be reinvested or held for reinvestment unless the members elect to distribute the cash instead.
Following its formation, the company purchased several parcels of real property. *426 When the subsequent sale of this real property had been finalized and a significant profit had been realized, a complaint was filed in which it was alleged that the company had sold all or substantially all of its property and assets, thereby effecting an event of dissolution pursuant to section 13 of the operating agreement. The appellants disputed that an event of dissolution had occurred, arguing that the proceeds from the sale were being held for reinvestment in accordance with the agreement and therefore constituted a substantial remaining asset of the company. They argued that there was no "disposition" of all or substantially all of the company's assets, and that section 13 of the agreement was consequently not satisfied. The trial court disagreed, ruling as a matter of law that the operating agreement provides that profits from the sale of the company's only property do not constitute assets of the company under section 13.
We cannot agree with this conclusion. Neither section 13 nor any other provision of the operating agreement unambiguously indicates that cash profits from the sale of company property are excluded from the term "assets." In order to accept the trial court's conclusion, we would be required to accord little significance to the company's broad purpose, perpetual duration, and reinvestment objectives recited in the operating agreement, and we would also be required to ignore numerous authorities specifically defining the term "asset" to include cash.
The language of the operating agreement does not unambiguously resolve the issue of whether the sale of the real property constituted an event of dissolution. If section 13 had made reference only to the "disposition of" all or substantially all of the company's property and assets, there clearly would have been no event of dissolution, because the company holds substantial remaining cash assets. Conversely, if the provision had referenced only the "sale" of all or substantially all of the company's property and assets, the trial court's interpretation would be more compelling. But, whether read in isolation or in conjunction with the entire operating agreement, section 13 as actually written is not free from ambiguity and its meaning consequently cannot be discerned from a simple reading of the operating agreement at the summary judgment stage of this litigation.
The order under review is accordingly reversed and this case is remanded.
HAWKES, J., concurs;
BENTON, J., concurs in the judgment with opinion.
BENTON, J., concurring in the judgment.
I write to underscore the narrowness of today's decision. We reverse the grant of summary judgment on grounds that controlling documents are ambiguous, so that parol evidence the parties may offer should be considered before the matter is finally decided. In doing so, we do not rule out the possibility that the trial court may end up, after all relevant evidence has been taken into account, construing the parties' agreements in exactly the same way that they were construed in the summary judgment proceeding.